51 N.J. Super. 356 (1958)
144 A.2d 37
EDWARD VOORHEES LIPMAN AND GARDINA ARMSTRONG LIPMAN, HIS WIFE, PLAINTIFFS,
v.
ELIZABETH SHRIVER, COLLECTOR OF TAXES OF THE TOWNSHIP OF BERKELEY, IN THE COUNTY OF OCEAN AND STATE OF NEW JERSEY, AND FREDERICK E. SCAMMELL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 2, 1958.
*357 Messrs. Sutton, Yoder & Ward, attorneys for plaintiffs (Mr. J. Lester Yoder, Jr., appearing).
Messrs. Camp & Simmons, attorneys for defendant Elizabeth Shriver, Collector of Taxes of the Township of Berkeley (Mr. Percy Camp appearing).
Messrs. Haines & Schuman, attorneys for defendant Frederick E. Scammell (Mr. Edward W. Haines appearing).
*358 KNIGHT, J.S.C.
The plaintiffs move for a summary judgment under R.R. 4:88-4 seeking a judgment in their favor on the demands set forth in the complaint, and the defendants move for a summary judgment on the ground that upon the facts and the law the plaintiffs are not entitled to the relief they seek.
The facts are undisputed and appear fully in the complaint. The plaintiffs own a tract of land, hereinafter referred to as the dominant estate, with an easement appurtenant to dam or draw water from or flow with water any part of the servient estate (which is the subject matter of this litigation). The defendant Scammell is the owner of two tax sale certificates covering the servient estate which he purchased on November 16, 1954 at a public sale of lands for unpaid municipal tax liens, and the defendant Shriver is the collector of taxes of the Township of Berkeley.
The complaint demands judgment directing the defendant Shriver to issue a statement to the plaintiffs showing the amount needed to redeem the property in question and to allow the plaintiffs to redeem the same for that amount under R.S. 54:5-54. The plaintiffs also seek an order directing the defendant Scammell to assign the said tax sale certificates to the plaintiffs in compliance with R.S. 54:5-56.
The issue which is the crux of this case is: Can the plaintiffs redeem the land in question under the authority of R.S. 54:5-54? The pertinent provision of this statute reads as follows:
"The owner, mortgagee, occupant or other person having an interest in land sold for municipal liens, may redeem it * * *."
Plaintiffs claim that their interest in this land, namely as holders of an easement therein, brings them within the clause "other person having an interest in land," and entitles them to redeem. In Kerr v. Trescher, 34 N.J. Super. 437 (Ch. Div. 1955), the court, in referring to R.S. 54:5, said that "The intention must be gathered from the spirit and policy of the statute rather than from the literal sense of *359 particular terms." It is necessary, therefore, to determine what interests of kinds of interests entitle the owner thereof to redeem under R.S. 54:5-54. The right to redeem has been accorded to a legal occupant of land, Hannold v. Cundey, 131 N.J.L. 87 (Sup. Ct. 1944); a widow with a right of quarantine Morvay v. Gressman, 29 N.J. Super. 508 (App. Div. 1954); and a holder of an unenforceable mortgage, Lake Waterloo Corp. v. Kestenbaum, 10 N.J. 525 (1952). In Taylor v. Borgfeld, 139 N.J. Eq. 177 (Ch. 1947) the court said:
"It is transpicuous that the authority to redeem is bestowed upon an owner to permit him to restore his title; upon a mortgagee for the protection of his lien; upon a tenant for the preservation of his leasehold estate; and upon others for the possible endurance of their existing legal interests in the land." (Emphasis supplied)
On the other hand, in Niestat v. Equitable Security Co., 138 N.J. Eq. 480 (Ch. 1946), it was held that the holder of an easement could not redeem since it would not be destroyed by foreclosure of the tax sale certificate.
It seems evident from the case law on the subject that the true criteria to be used in deciding what interests are encompassed by the phrase "other person having an interest in land" is whether a subsequent foreclosure will cut off that interest. If it would be cut off then the holder thereof has a right to redeem under R.S. 54:5-54, whereas if the interest would not be cut off by a subsequent foreclosure then the holder thereof has no right, nor indeed no necessity, to have the right to redeem to protect that interest.
Whether or not an easement appurtenant to the dominant estate will be cut off by foreclosure of a tax sale certificate covering the servient estate depends upon the effect given to and the method of assessment itself. Under R.S. 54:5-6 all taxes on lands "* * * shall be a lien on the land on which they are assessed * * *." The assessment is to be on all real property "* * * not expressly exempted from taxation or expressly excluded * * * at its true value, *360 and shall be valued by the assessors of the respective taxing districts." R.S. 54:4-1, as amended. Furthermore, "The assessor shall ascertain the names of the owners of all real property * * * and * * * determine the full and fair value of each parcel of real property * * * at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract * * *." R.S. 54:4-23, as amended. In Ehren Realty Co. v. Magna Charta Building & Loan Ass'n, 120 N.J. Eq. 136 (Ch. 1936), the court held that this statutory mandate required the assessor to take into account easements appurtenant as they will reflect the full and fair value of each piece of real property, citing Tax Lien Co. of New York v. Schultze, 213 N.Y. 9, 106 N.E. 751, L.R.A. 1915D, 1115 (Ct. App. 1914), wherein it was said:
"When an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased, practically by just the value of the easement; the respective tenements should therefore be assessed accordingly."
The court in Ehren, assuming that the assessor had followed this mandate, concluded that since the tax sale is based only upon the interest in the land which has been assessed, see also Metropolitan Life Insurance Co. v. McGurk, 119 N.J.L. 517 (E. & A. 1938), affirming 15 N.J. Misc. 572 (Cir. Ct. 1937), and that since the value of the easement must have been assessed to the dominant estate, foreclosure of the tax lien against the servient estate could not extinguish the easement as the sale of the servient estate is subject to it. This holding was reaffirmed in Niestat v. Equitable Security Co., supra, where the court said:
"So if the easement here was subject to the tax lien, it would follow that it would be destroyed by the foreclosure. But here the assessment and the lien did not attach to the easement. The easement was appurtenant to the dominant tenement, and a part of it, and therefore to a like extent separate and apart from the servient tenement. In other words all that could be assessed against the servient tenement was the fee minus the easement, which had ceased to be a part of the servient tenement."
*361 See also Jefferson v. Davis, 25 N.J. Super. 135 (Ch. Div. 1953), where the court held that rights to flowing water or an easement thereto are separate and distinct from the freehold interest in the land itself. In Chelsea Laundry Co. v. Toscano, 14 N.J. Super. 496 (Ch. Div. 1951), the court went even further in expanding this doctrine when it said that
"In a forclosure of a tax sale certificate against the servient tenant, such an easement [right of way created by prescription] cannot be extinguished even though the holder of the dominant tenement is joined as a defendant."
The court did not go into the question of what interest in the land was the basis of the assessment and assumed that the tax lien on the servient estate could not attach to the easement which was not a part thereof.
Thus, in the ordinary case where a tax lien is foreclosed the purchaser acquires an interest in the land equivalent to that which was assessed. Ehren Realty Co. v. Magna Charta Building & Loan Ass'n, supra; Metropolitan Life Insurance Co. v. McGurk, supra; City of Long Branch v. Highlands, Long Branch & Red Bank Steamboat Co., 134 N.J. Eq. 266 (Ch. 1943). Where the lien runs against a servient estate foreclosure will not cut off an easement appurtenant to the dominant estate, as the assessment upon which the lien was based is upon the value of the servient estate minus the easement while the dominant estate is assessed including the value of the easement.
In the case sub judice the court has before it facts which present a variation of the ordinary situation referred to. The affidavit of one Clinton Worth, who has been the tax assessor of the municipality in which both the servient and dominant estates are located since 1946, stated that when the property covered by the tax sale certificates, which is the servient estate, was initially put on the tax books and assessed, he was not informed of the easement therein and assessed the property without knowledge thereof. In addition, he states that he has "never included in the assessment on the *362 * * * [dominant estate] any value for the * * * [easement in the servient estate] because * * * [he] was never informed or aware that there were any such flooding rights when the assessments were made."
Upon the facts presented in the affidavit of Worth, it is clear that the assessment value of the servient estate does not reflect its true value under our statutes, as the flowing and flooding rights have not been taken into account. If they were, the value of the servient estate would no doubt decline. Whatever remedy may be available for such excessive valuation is not within this proceeding. However, the court cannot be sure that the valuation of plaintiffs' property, the dominant estate, does not reflect its true value. The assessment of the dominant estate is a total sum, representing the value of cranberry property. It must be assumed that this valuation takes into account the full and fair value of such property. It is not necessary that there be included a specific amount for the flowing and flooding rights, but just that the total assessment embody the value of cranberry bog property. If the assessment does represent, and assuming it does, the full and fair value of cranberry bog property, then it necessarily includes within that valuation the source of water, without which the land would be worthless for cranberry production. See Banks v. Simpkins, 88 N.J. Eq. 1 (Ch. 1917). Inasmuch as such water source is assumed to be included in the assessment valuation, where it comes from matters little, and the easement for water rights in the servient estate is reflected in the assessed valuation of the dominant estate.
Since the easement would not be cut off by foreclosure of the tax lien against the servient estate, it not being a part of that estate, the plaintiffs have no right to redeem under R.S. 54:5-54. There is therefore no right of assignment under R.S. 54:5-56.
Defendants' motion for summary judgment is accordingly granted.